# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TAJUDEEN LASISI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04 C 7415 |
| ) | |
| MOTOROLA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Tajudeen Lasisi has sued his former employer, Motorola, Inc., alleging he was subjected to unequal terms and conditions of employment and terminated from his job as a software engineer because of his race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5. Lasisi has also sued Motorola for unlawful retaliation for his opposition to the race discrimination he allegedly encountered. The case is before the Court on Motorola's motion for summary judgment. For the reasons stated below, the Court grants Motorola's motion with respect to each claim.

## Facts

On June 17, 2004, Motorola discharged Lasisi, who is African-American, from his position as a grade level E-10 section manager in software engineering. Lasisi had been employed by Motorola since January 22, 1996. He was initially hired as a software engineer but was promoted to the position of section manager in December 2000. According to Lasisi, his

1

employment problems began when he was transferred to the Integrated Data Enhanced Network ("iDEN") group in October 2001. The iDEN group is responsible for development of the Nextel phone network and products. During his first year with the iDEN group, Lasisi reported to Toshihiko Kii. For the remainder of his employment with Motorola, from approximately October 2002 to June 2004, his direct supervisor was Betty Burke. Throughout this period, both Kii and Burke reported to Dominic Alleva, senior resource manager for the iDEN division.

Lasisi contends that he suffered several racially motivated adverse employment actions at the hands of these individuals, which culminated in his dismissal from the company. In addition to his termination, Lasisi claims that Alleva denied his request for a laptop computer, denied his requests for reimbursement for home internet usage related to his work, and failed to reimburse him for work-related books he purchased. He also submits that Burke placed him on two performance improvement plans for invidious reasons.

Motorola asserts that Lasisi was terminated because of poor performance, pointing out that he received negative evaluations for three consecutive years prior to his termination. In 2001, Kii rated Lasisi's performance as SI, needing some improvement, and his relative effectiveness as LE, least effective, meaning that he assessed Lasisi as among the bottom 10% of comparable Motorola employees in effectiveness on the job. The general assessment of Lasisi's work, based on feedback from managers, group leaders, and team members, was that he was not contributing to the iDEN group at a level equal to the average level E10 engineer. Similarly, in 2002, Burke rated Lasisi's work product as SI and his relative effectiveness as LE. According to the report, Lasisi's rating was the result of poor work quality and his repeated failure to complete

test cases and meet deadlines.[1] In 2003, Lasisi once again received SI and LE ratings from Burke. Though the report states that Lasisi's performance now met many predefined goals, it nonetheless says that he "does not consistently meet all performance and/or behavior expectations." The report also indicates that Lasisi continued to offer excuses rather than solutions for getting tasks completed and that requests had been submitted from the system testers that they be allowed to write their own tests due to the poor quality of Lasisi's test cases and the amount of time needed to make the test cases usable. *See* Def's Ex. K.

Because Lasisi's performance consistently rated below Burke's satisfaction, she required Lasisi to participate in a 90-day performance improvement plan (PIP) beginning August 21, 2003. A PIP is an agreement between a manager and employee to execute a plan containing certain goals and objectives determined by the manager. The manager assesses the employee's progress at 30-day, 60-day, and 90-day intervals. Lasisi's PIP contained detailed examples of his unsatisfactory performance and outlined several goals and expectations for him to accomplish.

---

[1] Specifically, the report indicates that:
> [Lasisi's] deliverables did not consistently meet the deadlines outlined. He does not demonstrate the ability to multi-task as evidenced by the ss7 feature. He is not recognized as a technology expert although he has been with Motorola for a number of years and with SIST nearly two years.
>
> [Lasisi] is not proactive in obtaining necessary information – he waits and many times offers excuses rather than solutions. He does not clearly communicate commitments to peers and management. Feedback provided states that he is not a team player and cannot be relied on for technical information or commitments. [Lasisi] must begin to take ownership for his work product and behaviors.
>
> [Lasisi] is less effective than his peer group in technology, delivering high quality work products and meeting commitments.

Def's Ex. J.

*See* Pl's Ex. M. The agreement also stated that Lasisi may face termination if he failed to achieve these goals or maintain a satisfactory level of performance.

In his 30-day follow-up report, Burke outlined numerous instances in which Lasisi had failed to adequately complete projects and concluded that his performance during the evaluation period was "unacceptable." *See* Pl's Ex. M. The PIP does not contain 60-day and 90-day follow-ups. However, during Lasisi's second "checkpoint" of 2003, completed on October 13, 2003, Burke indicated that Lasisi was "on plan" in meeting his goals and demonstrated the behaviors required by the plan. *See* Pl's Ex. O. Lasisi's PIP was scheduled to end in November 2003, but it was "not formally" completed. Def's 56.1 Resp. ¶¶ 84-85. In her affidavit, Burke states that although Lasisi had not satisfactorily met all of his goals and expectations, she chose to not discharge him at that time because she had not obtained all the required signatures on the PIP. Burke Affid. ¶ 11. According to Burke, she advised Lasisi that a new PIP would be created for him. *Id.*

Beginning March 4, 2002, Burke placed Lasisi on another PIP. Lasisi claims that this PIP was distinct from the first, whereas Motorola maintains that this PIP was an extension of the 2003 PIP. The 2004 PIP provided a summary detailing Lasisi's poor performance, including work product and actions subsequent to the start date of his original PIP. *See* Pl's Ex. L. It also included a list of specific goals and required improvements. In her 30-day, 60-day, and 90-day reviews, Burke reported that Lasisi had not met the specific actions and expectations listed in the plan. In each instance, she documented specific expectations that were not accomplished and suggested corrective actions. According to Burke's reviews, Lasisi consistently failed to complete projects in a timely manner, turned in subpar work product, and otherwise failed to

4

meet the expectations for an E10-level engineer. Similarly, during a May 28, 2004 checkpoint, Burke gave Lasisi a number of poor ratings for goal completion. The PIP itself ended June 6, 2004. As a result of Lasisi's failure to satisfy the goals of the PIP, Burke and Alleva decided to discharge him at the conclusion of the PIP.

Lasisi disputes the bases for his poor evaluation ratings and PIP reviews, arguing that he received those ratings only because he is an African-American. He claims that Burke's reports contain numerous inaccuracies regarding his performance. Lasisi also maintains that his PIPs included unattainable goals that were designed to set him up for failure. Finally, Lasisi contends that the adverse employment actions taken by Motorola were in retaliation for his complaints to members of Motorola's management about racial discrimination. Lasisi testified that he first complained of experiencing racial discrimination around the end of 2001 and that he subsequently complained to various members of management and the human resources department in 2002, 2003, and 2004. On March 29, 2002, Lasisi filed a complaint with the Equal Employment Opportunity Commission. Motorola disputes when and to whom Lasisi voiced his concerns, but for purposes of this motion, the Court accepts Lasisi's contentions as true.

## Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Though the Court views the record in the light most favorable to Lasisi, the non-moving party in this instance, and draws reasonable inferences in his favor, *id.* at 322, Lasisi may not simply rest on

5

the pleadings but must instead affirmatively demonstrate that there is a genuine issue for trial. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003); *see also Davis v. GN Mortgage Corp.*, 244 F. Supp. 2d 950, 955 (N.D. Ill. 2003) ("A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence."). Thus, Lasisi must produce specific facts to support his contentions rather than relying on speculation or conclusions without factual support. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994).

### 1. Race Discrimination

A plaintiff may establish race discrimination by providing direct evidence of discrimination or by proceeding under the indirect burden-shifting method set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 793 (1973). *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). Because Lasisi has offered no direct evidence of discrimination, he must resort to the indirect method of proof. The *McDonnell Douglas* paradigm assigns the plaintiff the burden of establishing a *prima facie* case of race discrimination by showing that: he was a member of a protected class; he was meeting his employer's legitimate job expectations; he suffered an adverse employment action; and similarly situated employees not in the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff satisfies the elements of a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the adverse employment action. *Id.* The plaintiff must then demonstrate that the employer's stated reason is a pretext for discrimination. *Id.* at 803.

Motorola contends that Lasisi has failed to meet his initial burden of establishing a *prima facie* case of race discrimination. The Court agrees. Lasisi is a member of a protected class and

suffered an adverse employment action when Motorola terminated him.[2] Lasisi has provided insufficient evidence, however, from which a jury reasonably could find that he was meeting Motorola's legitimate job expectations or that similarly situated non-black employees were treated more favorably.

Lasisi asserts that his performance evaluations, which were the impetus for placing him on the PIPs, contained multiple inaccuracies and misrepresentations. In response to at least one report, Lasisi presented management with specific rebuttals to what he believed were unfounded criticisms in his evaluation. *See, e.g.*, Pl's Ex. HH. By directly disputing the bases of the criticism, Lasisi maintains that he has provided evidence from which a reasonable jury could find that he was meeting Motorola's legitimate expectations. Lasisi also highlights the fact that he received some positive feedback from Burke in his 2003 and 2004 checkpoints. In addition, Lasisi submits favorable survey responses from five co-workers, which, he claims, is further evidence that his performance was adequate.

---

[2] Lasisi argues that management's denial of his requests for a laptop computer, reimbursement for home internet usage, and reimbursement for work-related books also constitute adverse employment actions. These acts by themselves, however, do not rise to the level of adverse employment actions. "Mere unhappiness and inconvenience are not actionable under Title VII." *Haywood*, 323 F.3d at 532. Rather, an employee must show a quantitative or qualitative change in employment terms or conditions. *Id.* Lasisi has presented no evidence that these actions affected his ability to perform his engineering duties. And even if these decisions amounted to adverse employment actions, Lasisi has failed to provide any evidence that similarly situated non-black employees received different treatment. Likewise, Lasisi maintains that placing him on two PIPs constituted an adverse employment action. Lasisi has cited no authority indicating that requiring an employee to participate in this type of performance improvement plan constitutes an adverse employment action. The PIP reviews themselves are not adverse employment actions, as it is well established that negative performance evaluations alone are insufficient to satisfy this element. *Haywood*, 323 F.3d at 532. Lasisi claims that being placed on the PIPs substantially limited his responsibilities in his position, but aside from this conclusory contention, he has not provided evidence that the PIP resulted in a quantitative or qualitative change in employment terms or conditions.

The undisputed evidence, however, reveals that over the three-year period prior to his termination, Lasisi was consistently rated as needing some improvement and among the least effective employees at his level. His end-of-year reviews and PIP reports are replete with specific examples of how Lasisi's work product and behavior were not meeting Burke's expectations and the goals she had set for him. Though Lasisi attempts to refute some of the criticisms in his rebuttals, even giving Lasisi the benefit of the doubt that his justifications are accurate, the rebuttals do not create a genuine dispute. They primarily contain unsupported, self-serving statements and do not address the vast number of specific and detailed critiques contained in the reports. Lasisi cannot establish an issue of fact based upon his own contentions that the evaluations were an inaccurate reflection of his performance. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999). The five co-workers' opinions are likewise insufficient to establish an issue of fact. Lasisi created the survey, selected the employees who would participate in the survey, and received the responses via email with no attempt to make the process anonymous. The fact that four of these co-workers, none of whom appear to be in management positions, rated Lasisi as "[e]xtremely cooperative, eager and provide[s] equitable solutions," has no bearing on whether he was meeting management's legitimate expectations.

Lasisi further argues that he was inhibited from performing his assignments in a satisfactory manner because both his 2003 and 2004 PIPs included unattainable goals. But Lasisi has provided no evidence that the goals Burke set for him were unattainable and thus illegitimate expectations. Lasisi maintains that the PIPs contained vague assignments and unreasonable deadlines. These conclusory statements, however, do not create an issue of fact. *See id.* at 984-85. The only concrete example Lasisi provides is that it was unrealistic to require one person to

"evaluate 'thousands' of test cases and determine which were acceptable for automation." Pl's Resp. at 10. He cites Charles Wallace's testimony that it took his test group of three employees one year to automate 750 cases. But this comparison is inapt. Lasisi has not attempted to show that evaluating test cases to determine which are acceptable for automation takes the same amount of time or skill as performing the automation itself. Moreover, it is not clear from the PIP that Lasisi was expected to evaluate "thousands" of test cases. In short, Lasisi has not shown that a genuine issue of material fact exists with respect to whether Motorola's expectations were legitimate or whether he was meeting those expectations.

Nor has Lasisi provided evidence from which a jury reasonably could find that similarly situated employees outside of his protected class were treated more favorably by Motorola. To satisfy this aspect of the *McDonnell Douglas* inquiry, a plaintiff must point to an employee who is directly comparable to him in all material respects, such as someone who reports to the same supervisor, is subject to the same standards, and has comparable experience and qualifications. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Indeed, comparing Lasisi to the two individuals he names undercuts any contention that his termination was motivated by racial animus. It is undisputed that during the relevant time period, Burke placed three employees on PIP, including Lasisi, Rodney Utley, who is Caucasian, and Carolynn Cobey, who is African-American. *See* Pl's 56.1 Resp. ¶ 41.

Utley was placed on a PIP June 11, 2003. On October 1, 2003, Burke recommended that Utley's employment be terminated, as she concluded that he did not meet the minimum expectations of his PIP. *Id.* ¶ 43. Motorola's human resources department agreed to allow Utley to resign voluntarily in lieu of discharge. *Id.* ¶ 44. Reaching for an argument, Lasisi contends

9

that Motorola has provided no verified evidence demonstrating that Utley's employment was going to be terminated in lieu of his resignation. Yet, in his statement of facts, Lasisi admits as much is true. *See id.* ¶¶ 43-44.

Burke placed Cobey on a PIP in September 2003. Despite Lasisi's allegations that the goals set for Cobey were unattainable, Burke concluded that Cobey met the minimum expectations of her PIP and did not recommend Cobey for termination. *Id.* ¶¶ 45-47. Lasisi maintains that Cobey is not similarly situated in that she never complained of racial discrimination. But it is the plaintiff's burden, not defendant's, to identify similarly situated individuals. Lasisi has offered no other individuals for comparison.

In sum, assuming that Utley and Cobey could be found similarly situated in the necessary respects, Burke terminated one African-American employee, Lisisi, and one non-African-American employee, Utley, and retained another African-American employee, Cobey. If anything, this evidence tends to show that Motorola was not differentially treating its employees according to invidious racial classifications. Accordingly, Lasisi has not provided evidence sufficient for a jury reasonably to conclude that non-black similarly situated employees received more favorable treatment than him.

Even were Lasisi able to establish a *prima facie* case of race discrimination, he has not supplied evidence to support his final hurdle of establishing pretext. To show pretext, a plaintiff must demonstrate that the employer's proffered reason for termination, here, failing to meet minimum levels of performance expectations, is a lie or completely lacks a factual basis. *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). It is undisputed that Lasisi received poor performance ratings for three consecutive years. As discussed earlier, Lasisi has not established

the existence of a genuine dispute as to the veracity of the numerous deficiencies cited in his employment record. Even if Motorola's reasons for terminating Lasisi were mistaken, it does not establish pretext if the employer honestly believed those reasons. *Id.* Lasisi has submitted no evidence that Motorola management did not honestly believe that his performance was inadequate. Lasisi has done little more than declare his belief that the adverse actions were racially motivated. He has therefore failed to show that a genuine dispute exists regarding the issue of pretext. In sum, Motorola is entitled to summary judgment on Lasisi's race discrimination claim.

### 2. Retaliation

Lasisi also claims he was the victim of unlawful retaliation, alleging that he was placed on a PIP and terminated as a result of making several complaints of racial discrimination to members of Motorola's management. In particular, he points out that he was placed on his 2003 PIP within one month of voicing complaints to Motorola's human resource department. Because Lasisi offers no direct evidence of retaliation, he must proceed under an adaptation of the *McDonnell Douglas* test. To establish a *prima facie* case of retaliation, the plaintiff must show that he engaged in a statutorily protected activity; he performed his job according to his employer's legitimate expectations; he suffered an adverse employment action; and he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Haywood*, 323 F.3d at 531.

The Court has already concluded that Lasisi failed to show the existence of a genuine issue of material fact regarding whether he was performing his job in a satisfactory manner. Accordingly, Lasisi cannot establish a *prima facie* case of retaliation. Motorola is entitled to

summary judgment on this claim.

## Conclusion

For the reasons stated above, the Court grants Motorola's motion for summary judgment [docket no. 20]. The trial date of January 9, 2006 is vacated. The Clerk is directed to enter judgment in favor of defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 14, 2005